JSG

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6972 | **DATE** | 9/20/2001 |
| **CASE TITLE** | Beverly Rauen vs. United States Tobacco | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons contained in this memorandum opinion and order, US Tobacco's motion is granted as to Rauen's federal claims, while her state law claim is dismissed without prejudice. (48-1) There are no genuine issues of material fact as to either of Rauen's federal claims and US Tobacco is entitled to a judgment as a matter of law as to those claims. This action is dismissed with prejudice in that respect. As for Rauen's state law claim, it is dismissed without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 1 2001 | | 55 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | 15 | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 9/20/2001 | | |
| SN | courtroom deputy's initials | 01 SEP 20 PM 3:56 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | SN mailing deputy initials | | |

DOCKETED

SEP 21 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEVERLY J. RAUEN,                  )
                                   )
            Plaintiff,             )
                                   )
     v.                            )        No.  99 C 6972
                                   )
UNITED STATES TOBACCO              )
MANUFACTURING LIMITED PARTNERSHIP, )
                                   )
            Defendant.             )

## MEMORANDUM OPINION AND ORDER

Beverly Rauen ("Rauen") has charged her employer, United
States Tobacco Manufacturing Limited Partnership ("US Tobacco"),
with (1) failure to accommodate her asserted disability in
violation of the Americans with Disabilities Act ("ADA," 42
U.S.C. §§12101-12117),[1] (2) discrimination on the basis of her
sex in violation of Title VII (42 U.S.C. §2000e to 2000e-17) and
(3) intentional infliction of emotional distress under state
common law.  US Tobacco has filed a Fed. R. Civ. P. ("Rule") 56
motion for summary judgment, and both sides have at least
nominally (unfortunately, not with total success) complied with
this District Court's LR 56.1.[2]

----

[1]  Citations to ADA will simply take the form "Section--,"
omitting any reference to Title 42.

[2]  LR 56.1 is designed to facilitate the resolution of Rule
56 motions by calling for evidentiary statements and responses to
such statements (in each instance with record citations), thus
highlighting the existence or nonexistence of factual disputes.
This opinion cites to US Tobacco's LR 56.1(a)(3) statement as "U.
St. ¶--" and to Rauen's 56.1(b)(3)(B) statement of additional
facts as "R. St. ¶--."  Rauen's Response to US Tobacco's LR

Rauen's grievous health problems and her consequent
disability evoke enormous sympathy--but we always instruct juries
(civil and criminal alike) that such factors as sympathy cannot
be allowed to influence either their deliberations or their
decisions,[3] and a judge confronting the decision on a Rule 56
motion must be similarly guided.  For the reasons contained in
this memorandum opinion and order, US Tobacco's motion is granted
as to Rauen's federal claims, while her state law claim is
dismissed without prejudice.

## Summary Judgment Standards

Familiar Rule 56 principles impose on US Tobacco the burden
of establishing the lack of a genuine issue of material fact
(<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)).  For
that purpose this Court must "read[ ] the record in the light
most favorable to the non-moving party," although it "is not
required to draw unreasonable inferences from the evidence" (<u>St.
Louis N. Joint Venture v. P & L Enters.</u>, 116 F.3d 262, 265 n.2
(7th Cir. 1997)).  And as <u>Pipitone v. United States</u>, 180 F.3d
859, 861 (7th Cir. 1999) has quoted from <u>Roger v. Yellow Freight</u>

---

56.1(a)(3) statement is cited as "R. Resp. ¶--," although where
an U. St. assertion is not controverted a citation to that
statement ordinarily suffices.  This opinion employs the same
"U." and "R." abbreviations when referring to the parties'
exhibits and memoranda.

[3] See, e.g., Instruction 1.01 of the Federal Criminal Jury
Instructions of the Seventh Circuit (West 1999).

<u>Sys., Inc.</u>, 21 F.3d 146, 149 (7th Cir. 1994)):

> A genuine issue of material fact exists only when a
> reasonable jury could find for the party opposing the
> motion based on the record as a whole.

Even though intent is inevitably the issue in employment

discrimination cases (see, e.g., <u>Miller v. Borden</u>, 168 F.3d 308,

312 (7th Cir. 1999)), that does not negate the potential for

summary judgment in cases where a movant plainly satisfies the

Rule 56 standards (<u>id</u>.).  In those terms summary judgment is

appropriate if the record reveals that no reasonable jury could

find in favor of Rauen (see <u>Fuka v. Thomson Consumer Elec.</u>, 82

F.3d 1397, 1402 (7th Cir. 1996) and cases cited there).[4]

### Background

US Tobacco is a smokeless tobacco manufacturing company that

operates manufacturing facilities in Franklin Park, Illinois,

Nashville, Tennessee and Hopkinsville, Kentucky (U. St. ¶4).

Rauen began working for US Tobacco in 1968 as a branch secretary

at Franklin Park and has worked for the company ever since,

serving in various capacities (U. St. ¶5).  On August 16, 1999

---

[4]  <u>Alexander v. Wisconsin Dep't of Health and Family Servs</u>.,
No. 00-2603, 2001 WL 965938, at *5 (7th Cir. Aug 27) has recently
taken the occasion to stress that despite our Court of Appeals'
regular inclusion (more than 30 times!) of the phrase "added
rigor" in its opinions to describe the level of judicial scrutiny
involved, motions for summary judgment on claims involving
employment discrimination are actually reviewed under the same
standard as any other type of claim.  That of course marks the
death knell for the phrase, though it has never been too clear
what it added to the corpus juris to begin with.

Rauen filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), targeting US Tobacco with asserted disability-based and sex-based discrimination (U. St. ¶20). Because most of the significant facts tendered by the litigants[5] pertain to Rauen's ADA claim, this opinion will address those first, then will go on to discuss the legal aspects of that claim. After that discussion is completed, the same procedure will be followed as to Rauen's other two claims.

### Rauen's Medical History

In April 1996 Rauen was diagnosed with Stage III rectal cancer (U. St. ¶91). Following that diagnosis, Rauen had several surgeries and underwent radiation treatment and chemotherapy in 1996 and 1997 (U. St. ¶92). Because of her condition, Rauen went on short-term disability leave from April until October 1996 and then went on long-term disability leave from October through the end of that year (U. St. ¶93). Rauen returned to work in January 1997 and worked the entire year without taking added leave (U. St. ¶94).

Rauen suffered another series of misfortunes in 1998: She

---

[5] While nominally purporting to conform to the dictates of LR 56.1, Rauen's counsel did not adhere at all to the plain directives of that rule. As a result, this Court was unfairly put to the task of searching out for itself the areas of dispute between the parties and whether they rose to the level of materiality (that is, whether any disputed fact fell in the outcome-determinative category). That of course frustrates the very purpose of LR 56.1. US Tobacco's presentations also created difficulties, though not as troublesome.

was diagnosed with breast cancer in January (U. St. ¶95) and with metastatic rectal cancer that had progressed to her lung in May (U St. ¶96). Those ailments triggered surgical procedures—an ileostomy, a mastectomy and lung surgery (U. St. ¶¶95-96)—as well as additional chemotherapy (U. St. ¶95). As a result, Rauen had to take another short-term disability leave in January 1998, and that evolved into a long-term disability leave in July or August (U. St. ¶99).

Rauen returned to work on January 13, 1999, this time for good (U. St. ¶¶103-04). She worked the entire calendar years of 1999 and 2000 without taking any further extended leaves of absence (U. St. ¶104), but she has experienced difficulties related to her post-surgical condition. Rauen's ileostomy causes her to go the bathroom constantly,[6] to take 2 liters of fluids per day by IV and to wear an ostomy appliance that she must change daily (R. Ex. D). Rauen also has a condition called "leukopenia," occasionally suffers from rapid heartbeat, often gets very tired and experiences frequent weight fluctuation (id.)

### Rauen's Work at US Tobacco

At all times relevant to her ADA claim, Rauen has held the position of Software Engineer at US Tobacco. As described by the "Exempt Position Profile" for a Software Engineer published by US

---

[6] Although Rauen has not provided a record citation, R. Mem. 10 says that she must use the bathroom up to 14 times a day.

Tobacco, that position's responsibilities are broken down in this fashion (U. St. ¶138):

1. 60% of a software engineer's time is spent in providing project management for a variety of capital projects and initiatives.

2. 20% of the time is spent in working on systems used to control processing equipment within the manufacturing operations, working on software programs, providing services to ensure that the systems performed as designed and providing operator training and documentation.

3. 20% of the time is spent in serving a liaison between US Tobacco's Manufacturing Engineering Department in Nashville and the Franklin Park facility.

Two aspects of Rauen's work-related activity bear emphasis in light of the issues to be discussed in this opinion. First, as reflected in the above descriptions, a substantial portion of a software engineer's duties require her to be present in the workplace (U. St. ¶139).[7] Second, Rauen has admitted that she "could perform and exceed the essential functions of her job" at

---

[7] Although Rauen has "denied" U. St. ¶139 (which spoke of the "great majority" of Rauen's assignments not being capable of completion while working out of a home office), her attempted response at R. St. ¶42 never provides any outright rejection of that statement or any attempt at quantifying how frequently Rauen's workplace presence is necessary. Indeed, the most that Rauen has said is that she has wanted to work at home when her presence in the workplace is not required--and she wants to be able to make that decision.

all times after the onset of her disability (U. St. and R. Resp.
¶164).

Shortly after returning to work in January 1999, Rauen gave
someone at US Tobacco a January 15, 1999 letter from her
physician at the Mayo Clinic, Dr. John H. Pemberton (U. St.
¶107). Dr. Pemberton wrote (R. Ex. B):

TO WHOM IT MAY CONCERN:

Mrs. Beverly Rauen had a surgery under our care in April of
1996, for a rectal cancer. Postoperatively, she had
radiation chemotherapy and complications from that caused
severe radiation enteritis and a significant portion of her
small bowel was resected; this was in January of 1998. Mrs.
Rauen is now left with a diverting jejunostomy and is having
high output, which makes her very susceptible to
dehydration. She is requiring at least two liters of fluid
daily for hydration through her IV access port.

Because of these complications that have occurred and her
need for supplemental fluids, it would be to her benefit
that she be able to do work through a "home office." If you
have any further questions regarding this matter, please
feel free to contact my office.

After several months' delay, US Tobacco's Manager of Human
Resources for the Nashville facility Ken Brown ("Brown")
telephoned Rauen in April to schedule a meeting to discuss her
accommodation request (U. St. ¶121). On May 6, 1999 Rauen met
for that purpose with Brown, Human Resource Manager for the
Franklin Park facility Steve Haraf and Director of Electrical and
Systems Engineering John Waddle ("Waddle") (id.). Three days
before that meeting Rauen gave Waddle a letter in which she set

7

forth the reasons that she wanted to work at home, including her ostomy bag, fatigue and the need to go to the bathroom constantly (U. St. ¶119; R. St. ¶30).

Within a few days after the May 6 meeting, Rauen prepared typewritten notes summarizing her recollection of the meeting, relevant portions of which are reproduced here (U. Ex. 10):

> 11.  They asked how this home office would work.  How many days would I be at home.  I said I would be at the plant as needed -- that my job was not routine, it was project oriented, so that, as projects required it, I would be here.  I said if I had an installation going on, I might be here 7 days a week, that, in the past, I have worked 20-hour days.  Steve Haraf's face dropped when I said this.  But if there were no reason to be here, then I would be home.  They said they felt that some structure was needed, maybe coming to work 1 day each week.  I said I could see no reason to do that for the sake of doing that.  They said they felt that things going on in the Plant would affect my projects and that I needed to be here to know what's going on.  I said I could do that by phone and, when I felt it was necessary, I would go to the Plant.  So they said you want a home office in its entirety, that a partial home office was not acceptable.  I said yes.  They asked if I had room in my house.  I said we have a 4,000 sq. ft. house for 2 people.  Ken Brown said, so you have plenty of room.  They did not look happy about this.  Ken Brown asked if I would need to be on the network and was my house wired.  I said I would need to be on the network, and John Waddle indicated that we would have to work out the technical end of it (implying if or when that time came).

> 12.  They asked who would determine when I came to work.  I said if John wanted me for a meeting or other reason, I would be here.  If I had meetings, I would be here.  John said, "but you would determine when you would be here, right.  Right now, I don't know what time you get to work or what time you leave work, do I."  I said no, that's right; for the most part, I would determine when I would be here.

*          *          *

17. They asked me if there was any accommodation they could make at work for me. I said No. They said we could provide you with private facilities. I said that would not help. They said we could give you a place to rest during the day. I said if I want to rest I can lay down on the floor in my office. They asked what it was that made it difficult for me to come to work everyday. I said that if I could stay at home, there are things that I would not have to do everyday that I have to do now, that I get very tired, and that I have Leukopenia. I asked if they knew what that was, they said they did not. I explained that a normal person's WBC is 4,000 - 11,000 and mine was 2,600 last month. My immune system has been damaged. Ken Brown asked what that meant. I said it meant that I was highly susceptible to infections and I should not be around people who are sick. Ken Brown said, "Oh, you're not supposed to be around sick people."

As Rauen's notes reflect, she flatly rejected any accommodation other than her own proposal that she be allowed to work at home when her presence at work was not required, a determination as to which she would generally be the arbiter.

Unfortunately, any attempt by the parties at a meaningful discussion on the subject of reasonable accommodation began and ended with that meeting. There is no indication in the record that either party made any effort to communicate with the other about the status of the accommodation until almost 1-1/2 years after the May 1999 meeting. In fact, the only significant event during that time was Rauen's filing of her EEOC charge on August 16, 1999--a step that she took without notifying US Tobacco.

It was not until September 19, 2000 that either side made any renewed effort to work out some kind of accommodation. On

9

that date Rauen sent a second letter from Dr. Pemberton reiterating that it would be beneficial for Rauen to work at home. That set off a round of lengthy but unsuccessful attempts to meet to discuss an accommodation for Rauen. Those efforts are set forth in detail at U. St. ¶¶150-63.

Although this opinion does not ultimately rest its analysis on the breakdown of the interactive process, a few words should be said on that score. It is painfully obvious that neither party engaged in the interactive process in good faith (on that subject, see <u>Beck v. University of Wis. Bd. of Regents</u>, 75 F.3d 1130, 1134-36 (7th Cir. 1996)). There is no point in marshaling an exhaustive list of the parties' respective failures. Suffice it to say that Rauen may be faulted for her hard-line, all-or-nothing negotiating tactics and her decision to file an EEOC charge without having followed up with US Tobacco about the status of her proposal. And for its part, US Tobacco also exhibited a troubling lack of diligence and communication in attending to Rauen's request, as manifested in the total silence between the parties that ensued after the May 6 meeting. With that said, this opinion turns to the merits of Rauen's ADA claim.

Rauen's ADA claim

By definition the ADA prohibits disability-based employer discrimination (<u>Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship</u>, 209 F.3d 678, 683 (7th Cir. 2000), citing Section 12112(a)). Under

10

Section 12112(b)(5)(A) an employer may be found to "discriminate" for ADA purposes by:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity....

Here Rauen contends that her "home office" proposal is a reasonable accommodation and that US Tobacco has discriminated against her by not accepting that proposal. US Tobacco's summary judgment motion responds in several ways, including its assertion that Rauen is not entitled to any accommodation because she can perform the essential functions of the job without any accommodation. Because this Court finds that argument (based as it is on Rauen's own admission) to be persuasive, Rauen's ADA claim must be dismissed.

Neither party has cited any published Court of Appeals decision dealing with the question whether an employer has an obligation to provide a disabled employee with any accommodation where that employee can perform the essential functions of her job without any accommodation. Nor has this Court's independent research turned up any published authority on that issue. US Tobacco has however cited two unpublished opinions, including that of the Sixth Circuit in <u>Black v. Wayne Ctr.</u>, 225 F.3d 658

(Table), 2000 WL 1033026 (6th Cir. July 17)(per curiam).[8]  <u>Black</u>,
<u>id</u>. at *3 said in that respect:

> However, with regard to the third prong, Black cites no
> authority for what is apparently her view that the ADA
> requires an employer to provide accommodations even for
> employees who, although disabled, are able to perform
> the essential functions of the job without accommoda-
> tion.  Our research turns up no such authority; indeed,
> inasmuch as it is plaintiff's burden to demonstrate
> that a proposed accommodation is objectively reason-
> able, <u>see</u> <u>Monette v. Electronic Data Sys. Corp.</u>, 90
> F.3d 1173, 1183 (6th Cir. 1996), we think that where
> plaintiff is able to perform the job without accommo-
> dation, plaintiff cannot demonstrate the objective
> reasonableness of any desired accommodation.  Moreover,
> Black does not claim that Wayne Center made any adverse
> employment decision regarding her solely because of her
> disability, other than refusing the demanded accommo-
> dation.  Thus, Black has failed to prove the third
> prong of that test.

This case involves like circumstances:  As already noted,
Rauen admits that she can perform the essential functions of her
job as a Software Engineer without accommodation (U. St. and R.
Resp. ¶164).  Rauen's counsel has provided no authority or even
any argument as to why the principle articulated in <u>Black</u> should

---

[8]  Rule 53 of the Circuit Rules of our Court of Appeals
prohibits citation to an unpublished opinion if citation is
prohibited by the rendering court (7th Cir. R. 53(e)).  Rule
28(g) of the Rules of the United States Court of Appeals for the
Sixth Circuit states this exception to that court's disfavoring
of citations to unpublished decisions:

> If a party believes, nevertheless, that an unpublished
> disposition has precedential value in relation to a
> material issue in a case, and that there is no
> published opinion that would serve as well, such
> decision may be cited if that party serves a copy
> thereof on all parties in the case and on [the] Court.

not similarly control here.[9]

There may perhaps be situations in which an employee, although capable of performing the essential functions of her job, may be entitled to some form of accommodation because it is wholly unreasonable to require her to perform her work without the accommodation. But Rauen's counsel has not made that argument, let alone having adduced any authority to that effect, and this Court (having been unable on its own to locate any decision so holding) is not prepared to enter uncharted territory in that respect. That is particularly so in light of the fact that Rauen, who never adequately rejected US Tobacco's assertion that she would be need to be present at the plant frequently in any event, spurned all forms of accommodation at the plant. Rauen's ADA claim is therefore dismissed.

## Rauen's Sex Discrimination Claim

Next Rauen claims that US Tobacco discriminated against her

---

[9] Rather than attacking that premise, counsel for Rauen contends that US Tobacco has not provided any factual support that she can perform the essential functions of her job (R. Mem. 11). What that argument ignores entirely are Rauen's statements in her First Amended Complaint ¶18 and her admission in R. Resp. ¶164. Rauen's counsel also asks rhetorically why US Tobacco even proposed different accommodations at the May 6 meeting if it did not believe that she needed accommodations. But our Court of Appeals has observed that an employer that goes beyond the requirements of the ADA must not be punished for its generosity (see, e.g., Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1023 (7th Cir. 1997)). Thus US Tobacco's willingness to sit down to discuss possible arrangements with Rauen in that instance cannot impose liability if no statutory liability has existed in the first place.

on the basis of her sex in violation of Title VII.  That claim is predicated on two types of allegedly discriminatory conduct over a 30-year period:

> 1.  US Tobacco repeatedly failed to promote Rauen, assertedly because she was a woman.

> 2.  Rauen also assertedly suffered disparate treatment in pay from her similarly situated male counterparts.

US Tobacco responds that both facets of that claim are time-barred.  It is certainly right as to the failure-to-promote portion of the claim.  And as for the disparate pay allegations, even if it were to be assumed that Rauen is not out of time there as well (a problematic assumption at best, as explained a bit later), she has fallen far short of showing the existence of a triable issue of fact on that contention.

Title VII imposes a 300-day statute of limitations for filing an EEOC charge (<u>Minor v. Ivy Tech State Coll.</u>, 174 F.3d 855, 857 (7th Cir. 1999)).  For that purpose a plaintiff may not base her sex discrimination action on conduct that precedes that time frame unless it would have been unreasonable to expect the plaintiff to bring charges before the 300-day clock ran out on that conduct (<u>id</u>.).  Because Rauen filed her charge with EEOC on August 16, 1999, any conduct upon which she bases her sex discrimination claim that antedated October 20, 1998 (300 days before that filing date) is untimely and may not serve as a basis

for her claim.[10]

Although the specific events on which Rauen predicates both
aspects of her Title VII claim are not sufficiently set forth in
her submissions, Rauen admits that she was most recently denied a
promotion by US Tobacco in 1997 (U. St. and R. Resp. ¶19). Hence
there is no conduct upon which she can establish a failure-to-
promote claim within the 300-day statutory period, and that
component of her claim is consequently time-barred.

Rauen attempts to circumvent the statutory 300-day rule by
seeking to invoke the continuing violations doctrine. But even
apart from the narrow ambit of that doctrine in this Circuit
(see, e.g., such cases as Place v. Abbott Labs., 215 F.3d 803,
807-08 (7th Cir. 2000) and Wilson v. Chrysler Corp., 172 F.3d
500, 510 (7th Cir. 1999)), which would alone render it
inapplicable here, it must be anchored to some act of
discrimination within the limitation period (see, e.g., Place,
215 F.3d at 807 and cases cited there)--and no such act took
place here.

That leaves only Rauen's disparate pay claim, which may

---

[10] Such inability to state a timely claim should of course
be distinguished from the proposition that sex-discriminatory
conduct by an employer that antedates the 300-day watershed is
still admissible, when offered in support of a claim based on
conduct within the statutory 300-day period, as evidence of the
employer's discriminatory intent (see, e.g., Shanoff v. Illinois
Dep't of Human Servs., 258 F.3d 696, 705 (7th Cir. 2001) and
cases cited there).

itself confront timeliness difficulties.  But even apart from that potential problem,[11] a brief analysis suffices to show that Rauen falls flat on the merits.

At a minimum, a prima facie case of Title VII wage discrimination requires a plaintiff to show that she was paid less than a similarly situated male or males (<u>Johnson v. University of Wis.-Eau Claire</u>, 70 F.3d 469, 478 (7th Cir. 1995)). Rauen has proffered no such showing.  Despite devoting 10 pages of briefing to the subject, Rauen fails to identify even a single example of a man who worked in a position similar to hers and who received more money than she did.  Instead Rauen asks this Court to rummage through her cryptic exhibits (see, e.g, R. Ex. Y) in an attempt to cobble together some type of triable issue of fact on that claim.  In so doing, Rauen's counsel impermissibly attempts to thrust the litigant's responsibility onto the court. Like our Court of Appeals, this Court declines that invitation.[12]

---

[11]  Rauen really has not identified a single specific incident of disparate pay discrimination.  But because one of her exhibits (R. Ex. Y), though problematic in form and not fully enlightening, purports to be based in part on violations that occurred in 1999 and 2000, this opinion will overlook any evidentiary deficiencies and will assume arguendo that Rauen is indeed challenging some type of conduct that occurred during the limitation period.

[12]  <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991)(per curiam) coined a colorful aphorism to that effect:

Judges are not like pigs, hunting for truffles buried in briefs.

Both aspects of Rauen's Title VII claim have failed. It too is dismissed.[13]

## Intentional Infliction of Emotional Distress

Rauen's final claim is brought under Illinois common law, asserting the intentional infliction of emotional distress. Although a federal court will most frequently relinquish jurisdiction over supplemental state claims when the federal claims are dismissed before trial (see, e.g., <u>Rothman v. Emory Univ.</u>, 123 F.3d 446, 454 (7th Cir. 1997) and cases cited there), courts are not required to do so (see <u>id</u>., also citing cases). As <u>Rothman</u>, <u>id</u>. has said, quoting <u>Wright v. Associated Ins. Cos.</u>, 29 F.3d 1244, 1251 (7th Cir. 1994):

> In that regard, there are some cases "in which the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness and comity--will point to federal decision of the state-law claims on the merits."

---

And that teaching has since been repeated several times by our Court of Appeals (see, e.g., <u>Ehrhart v. Secretary of Health and Human Servs.</u>, 969 F.2d 534, 537 n. 5 (7th Cir. 1992)) and has been found equally felicitous by District Judges (including this one) in more than 25 opinions. If Rauen had such a claim, and this Court is aware of nothing to suggest that she does, it was incumbent on her to make a presentation that would enable this Court to make that determination.

[13] In cursory fashion, Rauen has also alleged that she has been denied training opportunities and equipment that were given to other employees (R. Mem. 32). Even apart from the fact she does not identify that as sex-based discrimination, she has also made no supported showing to that effect. Hence those allegations are also insufficient to withstand summary judgment on the Title VII claim.

Graham v. Commonwealth Edison Co., 318 Ill. App.3d 736, 745, 742 N.E.2d 858, 866 (1st Dist. 2000)(citations and quotation marks omitted) provides a recent renewed exposition of the standards that govern the Illinois tort of intentional infliction of emotional distress:

> In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must adequately allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. Liability only attaches in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. The distress inflicted must be so severe that no reasonable person could be expected to endure it.

Here Rauen bases her state law claim on the following conduct (quoted verbatim from R. Mem. 33):

> 1. Ms. Rundle [sic] was passed over on many occasions over the course of 30 years, for positions in which she was qualified for or could have been trained but in every instance a male was placed in the position;

> 2. She has been referred to as "chicky" in meetings as well as being told that a woman would never be placed in the manufacturing department;

> 3. For a period of 12 years Ms. Rauen had received excellent performance reviews, but after the filing of her lawsuit, suddenly was downgraded to a lower review;

> 4. Ms. Rauen requested accommodations from UST for her

disability, but never received a response for 4 months whereupon she had to send another letter to get a meeting scheduled and to this day her accommodation request has not been looked into;

5. Ms. Rauen was forced to return to work after facing several surgeries, had a lung biopsy, was forced to wear an ostomy bag, endures a number of medical problems because UST threatened to cut off her medical insurance;

6. and because of the company's refusal for Rauen's accommodation request of an at-home office during the week, Ms. Rauen must endure the humiliation and severe discomfort of going to the bathroom up to 14 times per day to change her ostomy bag and further endure the humiliation when her bag leaks and causes rashes and burns on her skin.

As is evident from the concept of "extreme and outrageous" conduct as articulated in Graham and like cases, that standard--though labeled as objective--is much akin to the "shocks the conscience" approach that has been repeatedly adhered to in substantive Due Process Clause analysis for nearly a half century (beginning with Rochin v. California, 342 U.S. 165, 172-73 (1952) and being repeated as recently as County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998)) and that has led to sharp difference as to its applicability among the highest Justices in the land. Because that issue is not automatically controlled by the reasons that have called for dismissal of Rauen's two federal claims, this Court deems it most prudent to eschew any effort to crystal ball what might shock the conscience of its state court counterparts under the factual scenario presented here.

Hence the procedure announced in the seminal decision in United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) and

19

repeated so often since then will be followed. Rauen's state law claim is dismissed without prejudice.

## Conclusion

There are no genuine issues of material fact as to either of Rauen's federal claims, and US Tobacco is entitled to a judgment as a matter of law as to those claims. This action is dismissed with prejudice in that respect.[14] As for Rauen's state law claim, it is dismissed without prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 19, 2001

---

[14] Both parties have filed motions to strike that are incidental to this motion for summary judgment. None is relevant under the circumstances, and all are denied as moot.